RICHARD KAGAN, trustee in bankruptcy,[1] vs. FORD MOTOR
CREDIT COMPANY.

Middlesex.    December 10, 1979. — February 19, 1980.

Present: ARMSTRONG, ROSE, & KASS, JJ.

Sale, Conditional sale.    Truth-in-Lending Act.

An "extension agreement" deferring payments due under an automobile
    retail instalment sale contract, which involved no change in the princi-
    pal, interest, or monthly instalments, was not a new consumer credit
    transaction, and the lender thus was required to follow the notice and
    repossession procedures in effect when the parties first entered into the
    underlying instalment sale contract.  [201-202]

CIVIL ACTION commenced in the Superior Court on
April 8, 1976.

The case was heard by Bennett, J., on a motion for sum-
mary judgment.

Michael E. Hager for the defendant.

Alan I. Margolies for the plaintiff.

KASS, J.  This controversy poses the question whether an
"extension agreement" which defers payments due under an
automobile retail instalment sale contract invokes the statu-
tory scheme regulating motor vehicle instalment sales in ef-
fect at the time of the extension agreement, or whether the
rights of the parties continue to be governed by the statutory
provisions in effect at the time when the parties first entered
into the underlying instalment sale contract.

The original plaintiff, Schifano, bought a new Ford
Thunderbird on September 24, 1973, made a down pay-
ment of $1,000 and financed the balance ($5,600) through

---

[1] A motion was allowed in the trial court substituting as the plaintiff the
trustee in bankruptcy of Frank J. Schifano, the original plaintiff.

an instalment sale contract.  After some irregularity in the making of Schifano's scheduled payments for October and November, 1974, the defendant Ford Motor Credit Company (Ford) and Schifano on January 25, 1975, executed a printed form entitled "Extension Agreement" which deferred the instalment due from Schifano on December 24, 1975, to October 24, 1976, in effect extending the due date of the last payment under the contract by one month.[2]  The following November Schifano's monthly payments, which were never current, became sufficiently delinquent so that on December 6, 1975, Ford sent him a writing entitled, "Rights of Defaulting Buyer Under the Massachusetts Motor Vehicle Instalment Sales Act."  Within the time allowed by Ford's notice, Schifano paid what was due, thus curing the default of which he had been notified.  Schifano, however, promptly relapsed into default and on January 28, 1976, Ford again sent to Schifano by certified mail, return receipt requested, a "Rights of Defaulting Buyer" notice.  This time Schifano did not repair his default; Ford repossessed the car registered to Schifano on March 3, 1976, at 5:00 A.M., and later that day returned the vehicle to the car dealer who originally sold the car.

Retail motor vehicle instalment sales are governed by G. L. c. 255B.  When Schifano bought his car, G. L. c. 255B, § 20A, as amended through St. 1969, c. 517, § 15, and § 20B, inserted by St. 1966, c. 284, § 3, laid down the rules for repossession after default, notices to buyers, disposition of proceeds of sale of the secured property, and the buyer/debtor's right of redemption.  The provisions of that statutory scheme material to this case are that, under § 20A, a creditor in the position of Ford, i.e., holder of an instalment sale contract, could repossess a car on default without prior notice, but was obliged, within five days of repossession, to notify the buyer/debtor (1) that his car had been

---

[2] On February 28, 1975, Ford assented to a request from Schifano that the payment date be changed from the twenty-fourth to the ninth day of each month, so that the final due date became November 9, 1976.  There is no suggestion by either party that anything turns on this change.

repossessed; (2) that the buyer/debtor had a right to redeem the car for a stated amount; (3) of his (the buyer/debtor's) rights as to a resale and his liability for a deficiency; and (4) the exact address where the buyer/debtor is to make any payment and where he is to deliver notice to the holder. Section 20B requires that the holder is to retain possession of the car in question for fifteen days after delivery of such a notice.

Ford complied with neither the postrepossession notice requirement of § 20A nor the fifteen-day-retention requirement of § 20B, and it is on this failure that Schifano bases his complaint for recovery against Ford under the provisions of G. L. c. 255B, § 20A, subsection E.[3] Schifano prevailed on a motion for summary judgment pursuant to Mass.R.Civ.P. 56, 365 Mass. 824 (1974), on the bases of pleadings, affidavits, and answers to interrogatories, and it is from the resulting entry of judgment that Ford appeals.

Instead of following the strictures of G. L. c. 255B, §§ 20A and 20B, as in effect on the date of the instalment sale contract, Ford followed the procedure spelled out in §§ 20A and 20B, as amended by St. 1973, c. 629, §§ 2 and 3. The 1973 act substantially revised §§ 20A and 20B, and among the most significant changes was a requirement of notice to the buyer/debtor before proceeding against the collateral. Ford adhered to that new procedure scrupulously, but the path chosen was the wrong one.

It is settled that provisions of G. L. c. 255B, consistent with the rule that statutes generally operate prospectively, are not applicable to conditional sale contracts made prior to the date when a change in the law becomes effective. *Yates* v. *General Motors Acceptance Corp.*, 356 Mass. 529, 531 (1969). That decision observed that "Section 20A is not procedural but affects substantive rights. The statute would impose an obligation on the defendant and confer a right on

---

[3] Section 20A, subsection E, provided: "Repossession without complying with the requirements of subsection B shall subject the holder to a penalty to the buyer of an amount equal to fifty percent of the fair market value of the collateral at time of repossession and in addition the buyer may sue the holder for conversion of the collateral."

the plaintiff which neither bargained for in their agreement, and thus substantially would alter their relationship." Moreover, § 6 of St. 1973, c. 629, provided, "This act shall take effect on January first, nineteen hundred and seventy-four and shall apply to consumer credit transactions entered into on or after said date."

Ford urges that the agreement deferring one of Schifano's instalments should be treated as a consumer credit transaction, since deferral of a scheduled payment is regulated by the statutory scheme, G. L. c. 255B, § 17, as amended by St. 1969, c. 517, § 13, and may involve, as it did in this case, payment of a deferment charge by the debtor. Transactions regulated by c. 255B are, however, subject to the provisions of G. L. c. 140C (the Truth-in-Lending Act),[4] and we turn to this for guidance as to what constitutes a consumer credit transaction. General Laws c. 140C, § 7(j), inserted by St. 1969, c. 517, § 1, provides that, "If any existing extension of credit is refinanced, or two or more existing extensions of credit are consolidated, or an existing obligation is increased, such transaction shall be considered a new transaction subject to the disclosure requirements of this chapter." The deferral of a scheduled payment involved no change in the principal, interest, or monthly instalments due from Schifano. The distinction is the more vivid because G. L. c. 255B, § 17, treats refinancing and deferrals as separate categories of transactions. Our view that a deferral of a scheduled payment is not a consumer credit transaction is in harmony with that expressed on behalf of the Federal Reserve Board.[5] Commenting on Regulation Z, 226.8(j), the text of which is the same as that of G. L. c. 140C, § 7(j),[6] Letter No. 1351 of the

[4] See G. L. c. 255B, § 25.

[5] General Laws c. 140C, § 11, authorizes adoption of regulations by the Commissioner of Banks to carry out the provisions of the Truth-in-Lending Act and refers him to the Federal Consumer Protection Act, 15 U.S.C. § 1601 et seq. (1976), and Regulation Z issued by the board of governors of the Federal Reserve system.

[6] Regulation Z, § 226.8, 12 C.F.R. 226.8 (1979), appears to be the source of the text of G. L. c. 140C, § 7.

Federal Reserve Board, dated August 1, 1979,[7] says that deferral of a payment and the establishment of a new due date would not, in the absence of a change in the number, amount or frequency of payments, constitute a refinancing so as to require new disclosure. That letter suggests that the imposition of a charge for the privilege of deferring a payment might be the occasion for fresh disclosures. We do not think such a qualification applies in our statutory pattern where, as we have observed, a deferment fee is expressly provided for and is differentiated from a refinancing fee.

Since the deferral of a scheduled payment due from Schifano did not rise to the dignity of a consumer credit transaction, Ford was bound to follow the notice and repossession procedure in effect when the original contract was entered into.

*Judgment affirmed.*

---

[7] 5 Cons. Cred. Guide (CCH) par. 31,862 (1979).

