RICHARD KAGAN, trustee in bankruptcy, *vs.*
FORD MOTOR CREDIT COMPANY.

Middlesex.   October 6, 1980. — December 5, 1980.

Present: HENNESSEY, C.J., QUIRICO, KAPLAN, LIACOS, & ABRAMS, JJ.

*Motor Vehicle,* Instalment Sales, Notice, Repossession. *Truth-in-Lend-*
*ing Act. Words,* "Refinancing," "Deferral or extension."

An extension agreement deferring a payment due under an automobile
retail instalment contract was not a new consumer credit transaction,
and the lender was, therefore, required to follow the notice and
repossession procedures in effect when the parties first entered into the
underlying instalment sale contract. [76-77]

CIVIL ACTION commenced in the Superior Court on
April 8, 1976.

The case was heard by *Bennett, J.,* on a motion for sum-
mary judgment.

Upon assessment of damages, judgment was entered by
*Young, J.*

After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.

*Michael E. Hager* for the defendant.

*Alan I. Margolies* for the plaintiff.

KAPLAN, J.   Frank J. Schifano, plaintiff (now a bankrupt
represented by Richard Kagan as trustee), recovered a judg-
ment in Superior Court against Ford Motor Credit Com-
pany, defendant, by reason of the failure of the defendant
to provide him with appropriate notice regarding its repos-
session of his automobile as required by the motor vehicle
instalment sale law (G. L. c. 255B).   The judgment was af-
firmed by the Appeals Court, 9 Mass. App. Ct. 198 (1980),
and the case is here on further appellate review pur-

suant to G. L. c. 211A, § 11 (*b*). We shall note briefly our agreement with the courts below.

On cross motions for summary judgment the case appeared thus. Schifano on September 24, 1973, bought a new 1974 Ford Thunderbird automobile from the dealer Abel Ford, Inc., at a "cash price" of $6,600. He paid down $1,000 and executed an automobile retail instalment contract for the balance — immediately invoking (we may say parenthetically) the protective provisions not only of G. L. c. 255B, above-cited, but also of our Truth-in-Lending Act (G. L. c. 140C), together with various provisions of the Federal Truth-in-Lending Act (15 U.S.C. § 1601 [1970] et seq.), complemented by Regulation Z (12 C.F.R. § 226.1 et seq. [1980]). By the contract Schifano undertook to make thirty-six monthly instalment payments, $192.80 each, commencing in October, 1973. The defendant purchased an assignment of the contract. Schifano performed more or less faithfully according to the terms of the contract through most of 1974. By a written form agreement between Schifano and the defendant dated January 25, 1975, the December, 1974, instalment was extended so that it became payable one month beyond the due date of the last instalment of the contract. For the extension, the plaintiff paid a fee of $37.71. He paid further instalments, but by January-February, 1976, he had fallen into material default. Accordingly the defendant forwarded to Schifano notices looking to repossession of the car, and in March, 1976, the repossession was carried out.

The seat of the controversy is that the notices conformed to G. L. c. 255B, § 20A, as amended by St. 1973, c. 629, § 2, which became effective on January 1, 1974, and according to § 6 "shall apply to consumer credit transactions entered into on or after said date." Schifano's claim, which has succeeded, is that the notices should have conformed to § 20A as it stood prior to the amendment, and the defendant's failure in that respect subjected it to the enforcement provision of that version of § 20A. On that footing Schifano

was awarded a judgment which with penalty amounted to $5,367.31 (plus interest of $1,122.84).[1]

The question reduces to whether we have here a consumer credit transaction entered into after January 1, 1974, within the meaning of § 6 of c. 629. The defendant points to the extension agreement after that date modifying the original contract in the one particular. We look in vain for any definition of the term "transaction" in any relevant law or regulation. Some light, however, can be found in G. L. c. 140C, § 7, which distinguishes between the "refinancing" of a credit obligation, and the "deferral or extension" of such an obligation. In the former case, "such transaction shall be considered a new transaction subject to the disclosure requirements of this chapter" (subdivision [*j*]). In the latter case, there is not a characterization of the transaction as "new"; full disclosures are forgone, and only limited disclosures are required to be made, and these only "if the creditor imposes a charge or fee for deferral or extension" (subdivision [*l*]).[2] Similar provisions appear in Regulation Z (at § 226.8 [*j*] and [*l*]), and have had some explication in releases of the Federal Reserve System.[3] The distinction taken helps toward a conclusion that the extension agreement herein did not constitute a transaction entered into after January 1, 1974, in the sense of rendering applicable the new law. The scope of the extension in fact was so small in relation to the original contract that it could be viewed by

---

[1] The failure to send appropriate notice subjected the defendant "to a penalty to the buyer of an amount equal to fifty per cent of the fair market value of the collateral at time of repossession and in addition the buyer may sue the holder for conversion of the collateral." G. L. c. 255B, § 20A (E) (prior to amendment). Take $5,000, the stipulated fair market value of the Thunderbird, add penalty of $2,500, deduct $2,132.69 as the outstanding balance owing by the buyer, and the result is the recovery stated in our text.

[2] The particular disclosures were in fact made in the extension agreement of January 25, 1975.

[3] See CCH Consumer Credit Guide, pars. 30,277 (February 9, 1970), 30,278 (February 16, 1970), 31,862 (August 1, 1979).

the parties as no more than a minor adjustment of perform-ance.[4]

It cannot escape attention that the result has its ironies. The amendments of § 20A (together with amendments of § 20B) may be thought to be on the whole favorable to buyers, although qualifying the remedies available to them for breach by the creditors of the statutory requirements involved.[5] And it would be hard to show that Schifano was prejudiced by the substitution of one form of notice for another. Nevertheless we agree with the courts below that the statutory imperative (described in n.1) must be served.

*Judgment affirmed.*

---

[4] The extension was not materially different from an arrangement made on February 28, 1975, by which instalment due dates were changed from the twenty-fourth to the ninth of each month, so that the instalment due January 24, 1975, now became due on February 9, 1975, and later instalments were correspondingly postponed. No charge was made for this accommodation. The defendant does not contend that this was a transaction within § 6 of St. 1973, c. 629.

[5] Without getting into detail, and with some sacrifice of accuracy, it may be noted that § 20A before amendment allowed the creditor on default to send the buyer a notice of intent to repossess fourteen days prior to the repossession date, § 20A (A); within five days after that date, the creditor must send a notice of repossession with a description of the buyer's right to redeem, § 20A (B). Repossession without compliance with § 20A (B) entitled the buyer to the remedies mentioned in n.1 above. Under the amended § 20A, the creditor, ten days or more after default, is to send a prescribed notice with the heading "Rights of Defaulting Buyer under the Massachusetts Motor Vehicle Installment Sales Act" informing the buyer that he may cure his default within twenty-one days, § 20A (c). The creditor may not repossess during this period, § 20A (d). After repossession, the buyer has an opportunity for twenty days to redeem, § 20A (c), (d). Under § 20B, as amended, a creditor may not obtain a deficiency where the unpaid balance of the buyer's obligation is $2,000 or less, § 20B (d). It is assumed that for violation of the notice provisions of amended § 20A the buyer would have conventional remedies, cf. § 20B (d). See generally H.J. Alperin & R.F. Chase, Consumer Rights & Remedies §§ 232, 234 (1979).